# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| HIKOJI SUZUKI, J.I. MANAGEMENT, INC., and ACORN COMPOSITE CORPORATION,<br><br>Plaintiffs,<br><br>vs.<br><br>SENSTON HOLDING COMPANY, LLC, SENSTON HOMES, INC., LARRY BELLISTON, SHIRL EKINS FAMILY TRUST, SHIRL EKINS, and SAND HOLLOW ESTATES,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:10CV21DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendants' Joint Motion to Dismiss Amended Complaint, and Defendants' Joint Motion to Disqualify Peterson, Reed, Warlaumont, and Stout as Counsel for Plaintiffs and Verification of Thomas R. Seneca. The court held a hearing on the motions on September 3, 2010. At the hearing, Plaintiffs were represented by James L. Warlaumont and Michael A. Stout, and Defendants were represented by Evan A. Schmutz and Martin R. Slater. The court took the motions under advisement. The court has carefully considered the pleadings, memoranda, and other materials submitted by the parties, as well as the law and facts relating to these motions. Now being fully advised, the court renders the following Memorandum Decision and Order.

**BACKGROUND**

This case arises out of the joint development activities of Sand Hollow Development Group, LLC ("SHDG") and Senston Homes in developing a real estate resort and residential project known as Sand Hollow Resort in Hurricane, Utah. In 2005, Defendant Larry Belliston and Defendant Thomas R. Seneca began trying to join together neighboring tracts of land near the Sand Hollow Reservoir. Senston Holding was the entity formed to purchase and hold this land under various real estate purchase contracts ("REPCs"). Several of these REPCs were entered into in 2005 in distinct transactions with separate landowners.

On May 21, 2005, Plaintiff Hikoji Suzuki entered into an Agreement for Sale and Purchase of Real Property ("Suzuki REPC"). On the same day, May 21, 2005, Plaintiff J.I. Management ("JIM") entered into an Agreement for Sale and Purchase of Real Property ("JIM REPC"). Both REPCs contained an integration clause, which provided: "This agreement constitutes the complete agreement between the parties and supercedes any prior, oral, or written agreements between the parties regarding the Property."

In 2006, Seneca incorporated and began managing Senston Homes. In consideration of a $25 million promissory note, Senston Homes purchased and acquired land from Senston Holding and pursued further development, construction, and marketing of the property. Also in 2006, Dave Wilkey organized and began managing SHDG. SHDG was the owner of separate tracts of land it desired to develop in conjunction with Belliston and Seneca. From early 2006, SHDG, Senston Holding, and Senston Homes pursued their development activities of these properties without any written agreement to govern their relationship. During this time, they formed a joint management team of Wilkey, Greg Jewkes, Belliston and Seneca.

In May 2007, SHDG and Senston Homes entered into a Master Joint Development Agreement ("Master Development Agreement"), which formalized the parties' working relationship and set out the terms and conditions governing their relationship. For the next two years, SHDG and Senston Homes continued to cooperatively, but independently, pursue the joint development of the Sand Hollow Resort.

In May 2009, Senston Holding, Senston Homes, Seneca, and SHDG became embroiled in a real estate dispute, which led to SHDG filing a lawsuit in Utah's Fifth Judicial District Court (case number 090501426) ("state case"). The action involves claims that arise from and relate to the real estate transactions and development activities of the parties. SHDG asserted claims against all the defendants regarding the Master Development Agreement. SHDG's claims include breach of contract with regard to the Master Development Agreement, unjust enrichment, equitable lien, injunctive relief, alter ego, and fraudulent conveyance. Senston Homes and Seneca asserted counterclaims and third party claims.

SHDG named the Plaintiffs in this case, Suzuki and JIM, as defendants in the state case as well and asserted claims against them for unjust enrichment and an equitable lien on their properties. In the state case, SHDG claimed that as part of the sale of their properties, Suzuki and JIM may have claims against the Senston Property for additional payments plus one-half of the profit on future sales of lots. SHDG also alleged that Suzuki and JIM have or claim some interest in the property, including their claimed entitlement to additional payments. SHDG claimed that Suzuki and JIM took the trust deeds and any claim for additional payment subject to any claims that SHDG might have on the Senston property on account of the improvements SHDG paid for and provided. Therefore, SHDG requested an equitable lien on the property sold

3

by Suzuki and JIM. Suzuki and JIM have not filed a counterclaim to that action but seek in this federal action an equitable lien on the same property.

The parties have been actively litigating the state case. In September 2009, Judge Shumate entered a wrongful lien injunction, enjoining SHDG from "making, uttering, recording, or filing any further liens, notices, lis pendens with respect to the property of Senston Homes, Inc., without further order of the court."

In October 2009, Plaintiff Acorn purchased Suzuki and JIM's interest in the underlying property in order to sue Senston Homes and the other defendants in this federal action. Acorn is alleged to be the owner of SHDG. On January, 11, 2010, Plaintiffs filed this federal action and recorded a lis pendens against the property. Suzuki and JIM's claims against Senston in this case are in relation to the REPCs for the property in dispute in the state case. Senston argues that their claims encompass things outside of the REPCs and that 24 paragraphs of the Amended Complaint in this case referencing an "overall development plan" demonstrate that the claims relate to the Master Development Plan at issue in the state case. The Senston Defendants filed a motion in the state case arguing that the federal action and lis pendens are in violation of Judge Shumate's wrongful lien injunction. But the motion was denied.

## DISCUSSION

### Defendants' Motion to Dismiss

Defendants move for dismissal of Plaintiffs' Amended Complaint on several grounds: (1) all of Plaintiffs' claims are compulsory counterclaims in the state case; and (2) Plaintiffs claims are barred the statute of frauds, and economic loss rule

Defendants first assert that the claims in this case are compulsory counterclaims in the

4

state case and, therefore, this court should dismiss this action. In May of last year, SHDG commenced litigation in state court against all of the parties in this case regarding the obligations imposed by the Master Development Agreement. Rather than respond to SHDG's claims in the state case, Plaintiffs decided to bring this case in a different forum. Plaintiffs, however, argue that their claims against Defendants in this case would be cross claims in the state case and cross claims cannot be mandatory.

Under both the Federal Rules of Civil Procedure and the Utah Rules of Civil Procedure, certain counterclaims (that is, claims against an opposing party) are compulsory, but cross claims are always permissive and never compulsory. Fed R. Civ. P. 13(a), (g); Utah R. Civ. P. 13(a), (f). For a claim to be compulsory, it must arise out of the same nucleus of facts and involve the same parties. *Nu-Med USA Inc. v 4 Life Research, LC.*, 190 P.3d 1264 (Utah Ct. App. 2008); *Mark VII Fin. Consultants v. Smedley*, 792 P.2d 130, 132 (Utah Ct. App. 1992); *Pipeliners Local Union No. 798, Tulsa, Okla. v. Ellerd*, 503 F.3d 1193, 1198 (10th Cir. 1974).

This case involves much of the same set of facts as the state case. While the parties are not identical because SHDG is not a party to this case, Plaintiffs' claims in this case have been purchased by the alleged owner of SHDG, who is the plaintiff in the state case. The relationship of these parties and their interests, therefore, are somewhat unclear but appear to be aligned. Plaintiffs, although being named as defendants in the state case, have not participated in that litigation. The lack of participation in that case is unusual given their claims to the property at issue in this case.

The state case brought by SHDG asserts that some of the defendants in this case breached a document known as a Master Development Agreement. Many of the allegations in this case

5

appear to relate to that agreement through reference to an overall development plan. In addition, Defendants assert that the REPCs that are clearly at issue in this case, reference and attach the Master Development Agreement. Plaintiffs claim an interest in the land owned not only by Senston, but also by SHDG and *vice versa*. Therefore, Plaintiffs' recharacterization of their claims as being distinct from, or unrelated to, the state case is unpersuasive.

The court acknowledges that cross claims are generally viewed as permissive. Because of the posture of the two cases, the court does not believe that it can dismiss Plaintiffs' claims in this action as compulsory counterclaims. But, due to the overlap of legal and factual issues between the two cases, the court is convinced that the resolution of the state case will greatly aid the resolution of this case. The relationships between the parties and their interests can also be better determined through that pending litigation. Because this court has the inherent right to control its docket when judicial economy supports it, the court concludes that this action should be stayed pending resolution of the state court case. *See Landis v. North American Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *United Steelworkers of America v. Oregon Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10 Cir. 2003). Parallel cases involving the same issues and parties are not in the best interests of the parties or the courts. Defendants' motion to dismiss, therefore, is denied without prejudice. If the state court is not resolved within a year of this Order, either party may move to lift the stay in this court. Until such time, the court further considers Defendants' Motion to Disqualify Peterson, Reed, Warlaumont, and Stout as Counsel for Plaintiffs to be moot.

**CONCLUSION**

For the reasons stated above, Defendants' Joint Motion to Dismiss Amended Complaint is DENIED WITHOUT PREJUDICE, and Defendants' Joint Motion to Disqualify Peterson, Reed, Warlaumont, and Stout as Counsel for Plaintiffs and Verification of Thomas R. Seneca id MOOT. For reasons of judicial economy, this case is STAYED. If the state action is not resolved within one year of the date of this Order, either party may move for this court to lift the stay.

DATED this 15th day of December, 2010.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge